[Opinion delivered April 17, 1883.]

---

## T. C. & ABE RHINE v. BLAKE & JENKINS.

(Case No. 4723.)

1. WITNESS — EVIDENCE.— A witness may, on cross-examination, detail all his knowledge of the matters in issue in response to a general request to do so, if, in thus doing, no improper evidence is elicited. The rule which confines the cross-examination to questions propounded and answered on the examination in chief does not exist in Texas.

2. EVIDENCE.— Declarations contemporaneous with the execution of a written instrument, made by those who executed it, showing their construction of it to be different from the legal import of its words, cannot be admitted in evidence against those who acted on the instrument as legally construed, and who were not present when such declarations were made.

3. HUSBAND AND WIFE.— The husband may, in the wife's name, delegate to another authority to collect rents accruing from the wife's separate property on a lease already made by the husband.

4. AGENCY — PAYMENT.— A tenant, desiring a discount on rent not yet due, by advancing the same, was told by his landlord that, if he concluded to make the discount and receive the advance payment, he would notify him through a third party, to whom, in that event, he should make payment. The third party afterwards told the tenant that the landlord would make the discount, and the rent was thereupon paid to such third party in cash and merchandise. *Held*, that the landlord was bound by the payment in cash, but not as to the amount paid in merchandise.

APPEAL from Dallas. Tried below before the Hon. George H. Aldredge.

Suit by appellants against S. D. Blake and E. M. Jenkins, then partners and merchants, to recover the sum of $2,030, alleged to be due for the rent of a storehouse, the separate property of Mrs. T. C. Rhine.

Plaintiffs alleged that in September, 1875, they leased this storehouse to Blake & Jenkins for a term of two years, beginning on the 1st day of October, 1875, and ending on the 1st day of October, 1877, for the sum of $290 per month, to be paid monthly in advance, on the first day of every month; that this rent was paid to the 1st day of March, 1876, and that Blake & Jenkins thereafter occupied the store under this contract during the months of March, April, May, June, July, August and September, in the year 1876, that is, for seven months, for which they refused to pay, and to recover which this suit was instituted after September, 1876.

Defendants answered that on the 15th day of November, 1875, the plaintiff, T. C. Rhine, by her husband, A. Rhine, as her agent, made and delivered to J. A. Leonard the written power of attorney set forth in the petition; that on October 29, 1875, Blake & Jenkins proposed to Rhine to anticipate the undue rents for nineteen months provided Rhine would discount undue rents at the rate of discount of two per cent. per month; that Rhine took this proposition under advisement, and promised to let them know in a few days of his acceptance or rejection of the same, through his agent, Leonard, and that in case he accepted the offer, Blake & Jenkins could pay the money over to his agent; that on the 10th of December, 1875, Leonard informed Blake & Jenkins of Rhine's acceptance of their proposition; that Blake & Jenkins, relying on the representations of Rhine, and on the power of attorney, then paid to Leonard the sum of $2,262 in cash, and passed to his, Leonard's, credit, and subject to his order, the additional sum of $2,900, in full satisfaction of rents for the nineteen months; that soon after, and before the institution of suit, Leonard in person and by his orders at various times drew out in cash and in goods and merchandise the whole of the deposit; that on the 14th day of December, 1875, Leonard ratified the verbal lease made with Rhine by Blake & Jenkins, and then leased the house to Blake & Jenkins for nineteen months, ending October 1, 1877, and acquitted them of the said rents.

Defendants further pleaded that A. Rhine was the husband of T. C. Rhine, and as such that he was managing and controlling her separate estate, and that about the 15th day of November, 1875, A. Rhine made a contract with J. A. Leonard by which Leonard un-

dertook with A. Rhine to build a two-story brick house on the lot north of and in the rear of the store described in plaintiffs' petition, the said lot being also the separate property of Mrs. T. C. Rhine; that in payment for the material and work to be used and employed in building this house, Leonard was to receive all of the rents to become due on the store then occupied by Blake & Jenkins under the verbal lease with A. Rhine to the 1st of October, 1877.

To the amended original answer of the defendants, the plaintiffs filed a replication in which —

1st. They excepted to the answer as insufficient in law.

2d. They denied the allegations; and

3d. They pleaded that Leonard was insolvent and largely in debt to Blake & Jenkins at the time of the transactions between Leonard and Blake & Jenkins, and that the same were in fraud of the rights of the plaintiffs; that, if Leonard ever had any authority to collect the rents from Blake & Jenkins, it was only as the same fell due by the month, and for the benefit of the plaintiffs; that Leonard was never authorized to anticipate and compound the plaintiffs' rents, and to apply them to his own use.

The defendants admitted that the storehouse was the separate property of Mrs. T. C. Rhine, the wife of A. Rhine, and that the rental contract for said house was for $290 per month.

*Crawfords & Smith*, for appellant, cited, on examination of witness, R. S., art. 2245; 1 Greenl. Ev., 13th ed., sec. 445, and notes; Houghton v. Jones, 1 Wall., 706.

On evidence, Starkie on Ev., 51, 87; 1 Greenl. Ev., sec. 108, and note; Bank v. Kennedy, 17 Wall., 25, 26; Abbott's Trial Evidence, p. 170.

On authority of husband to create agency, R. S., art. 2851; Magee v. White, 23 Tex., 194, 195; Patton v. King, 26 Tex., 686, 687; 1 Parsons on Con., 61 and 112; Story on Agency, 87; Rees v. Medlock, 27 Tex., 120; T. C. & Abe Rhine v. Blake, Jenkins & Boales, Court of Appeals, Galveston, March, 1881.

*H. Barksdale* and *John M. Stemmons*, for appellee.

Stayton, Associate Justice.— The manner in which the examination of a witness shall be conducted is largely addressed to the discretion of the court, and in this case, the fact that upon cross-examination the defendant Blake, without specific interrogatories, was asked to relate all matters relating to the transaction under ex-

amination from its inception, and that he was permitted under that general method of examination to state all that he knew about the case, no improper evidence having been elicited, was not an abuse of that discretion. The evidence elicited referred to the same matters as did that of the direct examination. The rule that the cross-examination must be confined to the questions propounded and answered on the examination in chief has not been followed in this state. Wentworth v. Crawford, 11 Tex., 133.

Nor did the court err in refusing to permit the witnesses Rhine and Jamison to state what was said between Rhine and Leonard at the time the power of attorney from Rhine to Leonard was executed; for neither Blake nor Jenkins were present, and whatever may have been the intention of the parties to the instrument, that could not be proved in that manner, to the prejudice of Blake & Jenkins, who were authorized to place upon the instrument the construction which the law places upon it, the situation of the parties and of the subject matter to which the instrument related being known. To permit parties to change the legal effect of an instrument upon which they intend others shall act, by proving the secret intention of such parties, or what they said at the time of the execution of the instrument, would destroy all faith in writings and enable parties to perpetrate frauds to the hurt of innocent persons.

It is urged that the court erred in permitting the following paper in evidence:

"McKINNEY, November 15, 1875.

"This is to certify that I hereby authorize Mr. J. A. Leonard, of Dallas, Texas, as agent in the leasing and making contract for lease, and to receive notes or lease moneys and signing lease, or making the necessary repairs to, and, in short, give him full authority as agent of my two-story brick storehouse, situated on Elm street, built by Leonard Bros., in the summer of 1875.

 (Signed)         "T. C. RHINE,

               "by A. RHINE, Agent."

In support of this objection it is claimed that A. Rhine could not thus affect the separate estate of his wife, and that his power to manage the separate estate of his wife could not be delegated by the husband to another.

In a case which called for it, the question as to how far a husband can delegate the power which the law confers upon him over the separate estate of the wife would be one of interest; but the facts of this case do not make such an inquiry necessary. The lease, in so far at least as the term for which rent in this case is sought to be

recovered, had been made by the husband; the money to result therefrom would become community property, and as absolutely subject to the husband's control, directly or through an agent, as though the property from which it resulted was his separate estate.

Whether that power of attorney alone, or in connection with the other facts in proof, authorized Leonard to receive the rents to fall due for the months succeeding February, 1876, and to discount the same in order to get an advanced payment, will be considered in connection with the assignments of error relating to the giving and refusing of instructions, and we will only here say that Rhine is bound by the lawful exercise of any power conferred by the instrument before referred to, upon Leonard, and by the exercise of any power which Rhine, by his acts or words subsequent to the execution of that instrument, induced Blake & Jenkins, or either of them, to believe he had conferred upon Leonard.

There was evidence tending to show that subsequent to the date of the power of attorney of date November 15, 1875, Rhine had discounted the rents to fall due for the months of December, January and February succeeding; that this occurred on the 29th of November, 1875; that at that time Rhine was seeking to get notes executed by Blake & Jenkins for the monthly rents to fall due, upon which, by discount, he thought he could raise money; that at that time he was informed by Blake that Blake & Jenkins would pay all of the rent in advance if he would discount the monthly payments to fall due; that he then did not conclude to accept the advance payment at the discount, but informed Blake he would consider of the matter, and, if he concluded to do so, he would notify him of that fact through Leonard, to whom, in that event, Blake & Jenkins should pay the rent less the discount.

The evidence further tends to show that Leonard subsequently informed Blake that Rhine had determined to make the discount and take the advanced payment, and that for the seven months' rent now sued for, and for the succeeding months of October and November, less the discount, Blake, for Blake & Jenkins, on the 10th day of December, 1875, made to Leonard full payment in cash, and that for the rent to fall due for the residue of the period for which the premises were rented, by agreement between the parties, Blake & Jenkins passed to the credit of Leonard $2,900, subject to his order in cash or merchandise; if taken in merchandise, no discount to be taken. At the time the matter was thus settled, the power of attorney from Mrs. Rhine by her husband to Leonard was exhibited. A part of the $2,900 was paid in cash and the residue in merchandise.

It was shown that by a contract dated on the 17th of December, 1875, Leonard contracted to build a house on a lot owned by Mrs. Rhine contiguous to that occupied by Blake & Jenkins, and that among other things Rhine had agreed to transfer to Leonard all of the rents to fall due from Blake & Jenkins after February, 1876.

On the one side the testimony tended to show that the rents were not to be transferred to Leonard until the house which he had agreed to construct should be completed; on the other side there was evidence, consisting mostly of declarations of Rhine, tending to show that Rhine had transferred the rents to Leonard absolutely, in part payment for the work which he had contracted to perform.

There was also testimony tending to show that Rhine knew that Leonard had made the discount and taken the advanced payment, though it does not appear that he knew just how the rent was paid, and that Rhine expressed his gratitude to Blake & Jenkins for making the advanced payments by which he was enabled to pay Leonard. On the other hand there was evidence tending to show that Rhine had no knowledge of the settlement which Leonard had made with Blake & Jenkins, until the failure of Leonard without completing the work.

The court in effect instructed the jury, that, if Rhine had transferred the rents to Leonard in advance as a payment to him for building the house, then a payment made to Leonard, however made, would entitle the defendants to a verdict. This charge was correct.

The court also, in effect, instructed the jury that if Rhine informed Blake that he would notify him by Leonard whether he would make the discount and take the advanced payments, and in case he so elected to do, that then the discount should be made and the advanced payment made to Leonard; and that Leonard afterwards informed Blake that Rhine had consented to do so, and that thereupon Blake & Jenkins had paid the same to Leonard, then such payment, so far as made in money, would be a defense to the action, but that in so far as the payment was made in merchandise, it would be no defense.

Under the facts in evidence, this charge presented the law of the case, if it were true that there had not been any transfer of the rents by Rhine to Leonard, nor ratification by Rhine of the payments in so far as they were made in merchandise, for neither the power of attorney nor the verbal direction to pay the money to Leonard would have authorized him to receive property in payment. The evidence, however, shows that in so far as the rent for the

months embraced in this suit is concerned, that the same was paid in money.

The power of attorney was full authority to Leonard to receive the rent in money, and whether it was sufficient under all of the surroundings of the case, to have authorized him to discount the rent and receive an advanced payment in money or not, need not be considered. If we were of the opinion that it gave no such authority, it could not change the result; for the evidence tends to show that the money was paid, after deducting the discount, in pursuance of a declaration by Leonard, to whom Rhine had referred Blake for information as to his wish upon the subject, that Rhine had elected to make the discount and take the advanced payment.

The declaration of Leonard under such circumstances was as binding upon Rhine as though made by himself, and a payment to Leonard, under directions from Rhine to make it to him, must be held binding upon him, without reference to the power conferred by the prior written instrument.

The court did not instruct the jury in reference to the authority conferred by the power of attorney erroneously, but, upon the contrary, submitted the question to the jury as to the authority of Leonard under all the evidence bearing upon the question of power or authority derived from whatever source, and the jury must have found that Rhine agreed that the discount should be made and that the advance payment should be made to Leonard, or they must have found that Rhine had knowledge of the whole transaction and afterwards ratified it, or they must have found that Rhine had absolutely transferred the rents to Leonard.

In either event, as there was evidence from which the jury might have found for the appellees, the judgment could not be reversed. What we have said renders it unnecessary to consider the assignments of error based upon the refusal of the court to give the charges asked by the appellants.

The evidence shows beyond question that the rent for the months embraced in the present suit was paid in money on the 10th December, 1875, and it shows with equal certainty that the written contract between Rhine and Leonard, in which the latter agreed to build the house for the former, was made on the 17th of the same month. This is a circumstance from which it is insisted that Leonard was not the owner of the rents on the 10th of that month, and that then no contract in regard to the building of the house existed. These were circumstances tending strongly to show that these things were true; yet a binding agreement or understanding not re-

duced to writing may have been made between the parties long
prior to that date. The questions of fact were fairly submitted to
the jury, and, under the conflict of evidence found in the record, the
finding of the jury must be held conclusive of the existence of some
one of the state of facts necessary to sustain the defense.

The court did not err in refusing to admit the lease of November
3, 1875, signed by T. C. Rhine for A. Rhine, for it never had been
delivered or in any manner accepted by Blake & Jenkins; nor did
the court err in refusing to grant a new trial, for the evidence upon
many material matters was conflicting, and the finding of the jury
thereon is conclusive.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered April 17, 1883.]